564 S.E.2d 379

The STATE, Respondent,

v.

Benjamin HEYWARD, Appellant.

No. 3503.

Court of Appeals of South Carolina.

Submitted April 8, 2002.

Decided May 28, 2002.

Rehearing Denied June 19, 2002.

154

Assistant Appellate Defender Robert M. Pachak, of S.C. Office of Appellate Defense, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott and Assistant Attorney General Caroline C. Tiffin, all of Columbia; and Solicitor David P. Schwacke, of N. Charleston, for respondent.

HEARN, C.J.

Benjamin Heyward appeals his conviction for assault with intent to commit first degree criminal sexual conduct (ACSC), contending the trial judge improperly charged the jury by defining the lesser included offense of assault and battery of a high and aggravated (ABHAN) as including the element of "sudden heat and passion upon sufficient legal provocation." We reverse and remand.[1]

## FACTS

On March 29, 1997, the victim ("Victim") left her boyfriend's house between 11:00 and 11:30 p.m. to meet friends. While en route, she received a page from her boyfriend. Victim stopped at the nearest pay phone which was located between a store and a post office. The area was dimly lit so she kept her car lights on and parked within ten feet of the phone.

When Victim parked, Heyward was using the phone. Victim observed him for approximately two minutes as he used the phone. She also noticed a mint green Honda with a front license plate depicting a rose on a black background. Victim did not know Heyward. After Heyward finished using the phone, Victim tried to call her boyfriend, but received no answer. When she turned around, Victim saw Heyward sitting in her car holding the keys.

Heyward asked Victim if he could take her for a ride. When she declined, he pushed her to the ground and started beating her head and face, telling her to shut up and let him take her for a ride. Victim momentarily broke free from Heyward and tried to get back in her car, but Heyward grabbed her from behind and began to choke her. He then dragged her and forced her into his car, making her crawl from the driver's side to the passenger side. He told Victim he was taking her for a ride "to get some of [her] good stuff."

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

As they started to drive away in Heyward's car, Victim continued to protest and Heyward told her to shut up or he was going to kill her.

After traveling about seven-tenths of a mile, Victim remembered that her aunt lived nearby. She escaped by opening the car door and jumping from the car. She then ran to her aunt's house and called 911. A Charleston County Sheriff's deputy took Victim's statement about her assailant, his car, and the attack. Victim was bruised, her eye was swollen almost shut, and she had cuts and scratches under her eye and on her arms.

Another deputy stopped a green Honda around 1:15 a.m. The driver, Heyward, and the car fit the descriptions of the kidnapping earlier that evening. When he looked into the car, he saw a gold earring on the passenger's seat, a gold chain on the driver's seat, and another gold earring under the passenger seat.

On Monday, Victim identified Heyward as her assailant from a photographic line-up of six men. Victim later went to the Charleston County Sheriff's compound and identified the green Honda with the rose license plate. She also identified a necklace, a stud earing, and a hoop earring found in the car as jewelry she was wearing when abducted. Further investigation revealed that a blood sample found on Heyward's shirt matched Victim's blood type.

Heyward was indicted for ACSC and kidnapping. At trial, in addition to charging the law on ACSC, the judge also charged the jury on ABHAN. While defining ABHAN, the judge stated that "[a]ggravated assault is the unlawful and intentional infliction of injury upon a human being in sudden heat and passion upon a sufficient legal provocation or when accompanied by circumstances of aggravation." The jury convicted Heyward of kidnapping and ACSC. The trial judge sentenced Heyward to life imprisonment for the ACSC charge and thirty years for kidnapping. Heyward appeals the ACSC conviction.

## DISCUSSION

Heyward contends the trial judge erred in defining ABHAN as including the element of sudden heat of passion upon a sufficient legal provocation. We agree.

In *State v. Pilgrim*, 326 S.C. 24, 482 S.E.2d 562 (1997), our supreme court reversed a trial judge for equating ABHAN to voluntary manslaughter because the comparison improperly added an additional element of sudden heat of passion upon sufficient legal provocation. In this case, the trial judge stated that "[a]ggravated assault is the unlawful and intentional infliction of injury upon a human being *in sudden heat and passion upon sufficient legal provocation* or when accompanied by circumstances of aggravation." (emphasis added). Thus, the trial judge's charge was improper.

▮▮▮ Furthermore, the improper charge was not harmless because an ABHAN charge was required given the evidence presented at trial. Our supreme court has held that ABHAN is a lesser included offense of ACSC. *State v. Elliott*, 346 S.C. 603, 607–08, 552 S.E.2d 727, 729–30 (2001). ABHAN requires an unlawful act of violent injury accompanied by circumstances of aggravation. *State v. Sprouse*, 325 S.C. 275, 286, n. 2, 478 S.E.2d 871, 877, n. 2 (Ct.App.1996). A trial judge must charge a lesser included offense if there is any evidence from which it can be inferred that the defendant committed the lesser included of the crime charged. *State v. Drafts*, 288 S.C. 30, 32, 340 S.E.2d 784, 785 (1986).

The factual scenario presented in *Drafts* is strikingly similar to that presented here. Like Heyward, Drafts was also indicted for kidnapping and ACSC. The critical issue in *Drafts* was whether the trial judge erred in failing to issue an ABHAN charge. Drafts coerced the victim into going for a ride with him by showing her a knife. Once inside the vehicle, Drafts brandished the knife and asked if she would "give him a little bit" and then asked her to have oral sex with him. 288 S.C. at 33, 340 S.E.2d at 786. Drafts also kissed the victim, touched her breasts and between her legs, and tried to place his hands under her shirt. In his defense, although admitting taking indecent liberties with the victim, Drafts claimed he did not want to do anything with her. On these facts, the South Carolina Supreme Court reversed, stating: "If the jury had believed appellant 'did not want to do anything' with the victim, they [sic] could have concluded there was no attempted

sexual battery and found him guilty of ABHAN." 288 S.C. at 34, 340 S.E.2d at 786. Accordingly, the court held it was error for the trial judge to refuse to charge ABHAN.

■ The dissent would find the erroneous charge harmless because it believes Heyward's intentions, as expressed in the threat that he was going "to get some of [Victim's] good stuff" were to rape Victim. Even though it appears, based upon Heyward's allusion to Victim's "good stuff", that Heyward may have intended to sexually assault her, that does not vitiate his entitlement to the lesser included charge of ABHAN under the clear holding of *Drafts*. In *Drafts*, the intentions of the defendant were even clearer than Heyward's—in that case he asked the victim to "give him a little bit" and asked her to perform oral sex. Moreover, Drafts' alleged statements were not the only evidence of his intent. He also kissed the victim and touched her breasts. Nevertheless, the South Carolina Supreme Court found Drafts was entitled to an ABHAN charge. Therefore, under existing case law governing lesser-included offenses and most particularly under *Drafts*, we cannot isolate Heyward's single statement concerning Victim's "good stuff" to the exclusion of the evidence that Heyward was guilty only of ABHAN. As noted in *State v. Burriss*, 334 S.C. 256, 265, 513 S.E.2d 104, 109 (1999), to warrant eliminating a lesser included offense charge, it must "very clearly appear that there is *no evidence whatsoever*" tending to reduce the crime from the greater offense to the lesser. It is impossible on these facts to find that there was no evidence whatsoever tending to show ABHAN. Because Heyward was entitled to the benefit of an ABHAN charge, the trial judge's erroneous charge cannot be considered harmless. Accordingly, Heyward's conviction for intent to commit first degree CSC is reversed and the case is remanded for a new trial.

**REVERSED AND REMANDED.**

HOWARD, J., concurs.

GOOLSBY, J., dissents in a separate opinion.

GOOLSBY, J. (dissenting).

I respectfully dissent. I would hold any error committed by the trial judge in instructing the jury regarding assault and

battery of a high and aggravated nature was harmless. Here, given the evidence, the appellant was not entitled to the charge in the first place.

The only reasonable inference that can be drawn from the evidence is that the assault that the appellant committed on the victim, a person whom he did not know, was solely for the purpose of subduing her and carrying her away for the purpose of raping her. His statement to her that he was taking her for a ride "to get some of [her] good stuff," together with the victim's understanding that he meant to rape her, are probative of this and this only. Indeed, there is no evidence otherwise.

And that is what distinguishes this case from *State v. Drafts*, 288 S.C. 30, 340 S.E.2d 784 (1986), the case that the majority views as controlling. There, the appellant testified in his own defense and claimed "he did not want to do anything" to the victim. Here, the appellant did not testify and thus offered no evidence about what he intended to do or not do to the victim.

I would affirm.